UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>v.<br><br>JARIS TORRES-ITURRE,<br><br>                                    Defendant. | Case No.: 3:15-cr-2586-GPC-1<br><br>**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 168]** |

Defendant Jaris Torres-Iturre ("Torres") filed a motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c). ECF No. 168. The Government opposes. ECF No. 174 ("Opp."). For the reasons that follow, Torres's motion is GRANTED.

## I.    BACKGROUND

Torres was convicted by guilty plea of one count of Conspiracy to Distribute Cocaine Intended for Unlawful Importation in violation of 21 U.S.C. §§ 959, 960 and 963. ECF No. 160. Torres was sentenced to a term of imprisonment of 84 months to be followed by a five-year term of supervised release. *Id.* Torres is now serving his sentence at a privately-owned facility, Great Plains Correctional Facility ("Great Plains"). ECF No. 168 at 3; Opp. at 2. Torres has served approximately 66 months, or 78% of his sentence, not accounting for good time credits. ECF No. 168 at 3 n.1; ECF No. 99

1

("Presentence Investigation Report" or "PSR") at 1.  He is scheduled to be released on August 21, 2021.  ECF No. 168 at 3; Opp. at 2.

Torres has a number of medical conditions.  Most relevant to the instant motion are Torres's hypertension, cirrhosis of the liver, and body mass index of between 35 and 36, which renders him obese.  PSR at 9–10; ECF No. 168 at 6–7, 14; Opp. at 8.  Torres also had tuberculosis in 1998 and has since suffered from shortness of breath and respiratory issues; has prostatitis (prostate inflammation), hematuria (blood in urine), arthritis, and depression; and experiences severe abdominal pain.  PSR at 9; ECF No. 168 at 6–7.  On November 16, 2020, Torres tested positive for COVID-19, and he reports that he lost weight[1] and experienced headaches, body aches, vomiting, and respiratory issues.  ECF No. 168 at 13.  Torres states that he continues to feel weak and experience difficulty breathing, chest pain, and headaches following his infection.  ECF No. 175 at 8–9.

On October 1, 2020, the Court accepted as filed a *pro se* letter from Torres requesting a sentence reduction.  ECF No. 166.  On March 10, 2021, Torres, through counsel, filed a formal motion for compassionate release.  ECF No. 168.  On March 26, 2021, the Government filed a response in opposition.  Opp.  On April 5, 2021, Torres filed a reply.  ECF No. 174.

## II.   DISCUSSION

Torres moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—

---

[1] Torres states he believes he lost 21 pounds in one month, whereas the Government states that the medical records reflect that Torres appears to have lost about 10 pounds in the course of two months. ECF No. 168-1, Ex. B ¶ 13; Opp. at 17 n.13.

2

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

. . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Torres has satisfied the administrative exhaustion requirement, and second, whether Torres has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*. As one district court explained:

The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or

its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A).  *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A.   Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release.  The parties agree that Torres has met the statutory exhaustion requirement because he filed this motion over 30 days following his request for compassionate release to the Great Plains Facility Administrator.  *See* ECF No. 168-1, Ex. C; Opp. at 8 n.6. Accordingly, the Court can consider the merits of Torres's motion.

### B.   Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

(1) (A) Extraordinary and compelling reasons warrant the reduction; or

. . .

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release. While the Court's decision is guided by this policy statement, a number of district courts have found that the amended Section 3582(c)(1)(A)(i) grants courts independent discretion to determine whether a defendant has provided extraordinary and compelling reasons for a reduction of their sentence. *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md.), *aff'd sub nom. United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *see also United States v. Redd*, 444 F. Supp. 3d 717, 724–25 (E.D. Va. 2020).

Torres argues that he remains vulnerable to serious illness were he to become reinfected with COVID-19, given his many health conditions and BMI of between 35 and 36. ECF No. 168 at 13–16. The Government concedes that his obesity is a condition that could render Torres eligible for consideration for compassionate release in light of COVID-19, but maintains that even combined with his other conditions, Torres does not present extraordinary and compelling reasons for release. Opp. at 12–17.

The Court finds that the heightened health risks that Torres would face if he were to contract COVID-19 based on his medical conditions establish extraordinary and compelling reasons for his release. Obesity, hypertension, and cirrhosis are all identified by the Centers for Disease Control and Prevention ("CDC") as conditions that can

5

heighten the risk of severe injury for those who contract COVID-19.  *See People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions /people-at-higher-risk.html.  The link between obesity and poor COVID-19 outcomes is well-established, and the CDC has stated that "the risk of severe COVID-19 illness increases sharply with elevated BMI."  *See People With Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2F (updated Mar. 29, 2021).  The evidence supporting a link between severe COVID-19 and both non-pulmonary hypertension and liver disease (including cirrhosis) is not as stark, but is still concerning.  The CDC notes that "possibly high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19."  *Id.*  A recent review of existing studies examining the link between COVID-19 outcomes and chronic liver disease indicates that patients with cirrhosis may face an increased risk of mortality if infected with the coronavirus.  *See* Thomas Marjot et al., *COVID-19 and Liver Disease: Mechanistic and Clinical Perspectives*, Nature, Mar. 10, 2021, https://www.nature.com/articles/s41575-021-00426-4.

An incarcerated person like Torres, who has a constellation of underlying conditions identified by the CDC as potential risk factors for suffering severe illness or death COVID-19, is unlikely to be able "to provide self-care within the environment of a correctional facility" to avoid contracting and suffering serious effects of COVID-19 as the virus continues to spread.  U.S.S.G. § 1B1.13 cmt. 1(A)(ii).  *See United States v. Ramos*, 450 F.Supp.3d 63, 65 (D. Mass. 2020) ("[I]t is not possible for a medically vulnerable inmate . . . to isolate himself in this institutional setting.").  Even though Torres previously contracted COVID-19 and thus may have gained some immunity to further infection, the science is currently unclear as to how long such immunity lasts, and the spread of new variants adds additional uncertainty.  *See* Pengfei Wang et al., *Antibody*

6

*Resistance of SARS-CoV-2 Variants B.1.351 and B.1.1.7*, Nature, Mar. 8, 2021, https://www.nature.com/articles/s41586-021-03398-2.  Given that Torres indicates he continues to suffer residual effects of his last encounter with COVID-19, *see* ECF No. 168-1, Ex. B ¶ 13, and that he has several health conditions that the CDC states may make severe disease more likely, the Court concludes that Torres is still at high risk.

Therefore, the Court finds that Torres's health conditions present extraordinary and compelling reasons under Section 3582.

### C. Sentencing Factors and Public Safety

Before determining if release is warranted, the Court must also take into account public safety and the Section 3553(a) sentencing factors.  18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii); U.S.S.G. 1B1.13(2).  These factors include, among other things, the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

The Government argues that Torres's repeated involvement in maritime drug trafficking demonstrates that a time-served sentence would provide inadequate deterrence and increase the risk of recidivism.[2]  Opp. at 21–22.  The Government also notes that Torres will almost certainly be transferred to the custody of Immigration and Customs

---

[2] The Government spends several pages arguing that a reduction in sentence is unwarranted under the sentencing factors because Torres previously contracted COVID-19 and has recovered without severe effects.  Opp. at 17–21.  For the reasons explained in the previous section, the Court is unpersuaded by this argument, as Torres may still be at risk of reinfection.  And notably, Torres did not have an asymptomatic infection, but experienced moderate symptoms that appear to have exacerbated his existing respiratory issues and chest pain.  *See* ECF No. 168-1, Ex. B ¶¶ 8, 9, 13.  The Court also notes that many of the cases and news articles cited by the Government in support of its position that reinfection is not a concern were published before the emergence of the more contagious and deadly coronavirus variants.  If anything, Torres's past infection—which, while not severe by clinical standards, has left lasting effects—has rendered his period of incarceration more difficult than contemplated at the time of sentencing.

7

1  Enforcement ("ICE") once released, which may pose greater risks to Torres's health and

2  would prevent the Court from imposing a term of home confinement.  *Id.* at 22–24.

3  Torres responds that the deterrent effect of his original sentence will not be meaningfully

4  affected by reducing his sentence by less than five months, and that his term of

5  imprisonment has been harsher than what the Court originally anticipated given the

6  pandemic.  ECF No. 175 at 12.  Torres also contends that his transfer to an ICE facility

7  will occur regardless of when he is released, but the less time he spends in custody, the

8  better.  *Id.*

9       In committing the instant offense, Torres drove and navigated a vessel containing

10  approximately 711 kilograms of cocaine for the purpose of importing the drug into the

11  United States.  PSR at 4–5.  Torres had committed a similar offense in 2000,

12  approximately 15 years prior to the instant offense.  *Id.* at 7.  By virtue of introducing

13  controlled substances into the community, drug distribution offenses pose a danger to

14  public safety, and the Court does harbor concerns that Torres has twice conspired to

15  import cocaine into the United States.  However, Torres's previous offense occurred over

16  two decades ago, and he is 53 years old and is less likely to reoffend given his health

17  issues.  *See id.* at 3.  There is also no indication that Torres has engaged in violence or has

18  been subject to any disciplinary action while in custody, beyond a single incident during

19  his prior sentence in 2005 in which he was found in possession of two I.D. cards.  ECF

20  No. 168-1, Ex. D.  The Court therefore finds that Torres would not pose a particular

21  danger to public safety if released.

22       The Court also finds that the sentencing factors set forth in Section 3553(a) weigh

23  in favor of granting Torres a sentence reduction.  Torres has served over five and a half

24  years of his full seven-year sentence, and has a mere four and a half months remaining

25  before his anticipated release date.  The fact that Torres is at the end of his sentence

26  indicates that a slight reduction in sentence would still result in time in custody that

27  reflects the seriousness of the offense and provides adequate punishment and deterrence.

28

8

*See* 18 U.S.C. § 3553(a)(2).  Further, both of Torres's co-defendants were released over a year ago, and thus a sentence reduction would not result in unwarranted disparities between those convicted of similar conduct.  *See* 18 U.S.C. § 3553(a)(6).  Although the Court will be unable to impose a term of home confinement on Torres because he will likely be deported or otherwise depart the United States, he has such a short time remaining before his scheduled release date—at which point he would also be released without the possibility of supervision—that this reality does not weigh much against a sentence reduction.

As to the Government's argument that Torres will be at greater risk of COVID-19 infection if he is transferred to ICE custody, neither the Court nor the parties can determine with any certainty how long Torres will remain in ICE custody before he is returned to Colombia.  But what is clear is that the longer Torres remains incarcerated in any facility, whether criminal or immigration, the longer he will face potential exposure to the virus in a congregate setting.  Although there is hope that the United States will have brought the virus under greater control by the summer, it is far from obvious that ICE facilities will be significantly safer at the time of Torres's anticipated release date in August.  The Court therefore finds that reducing Torres's sentence to time-served would decrease the total amount of time he spends in custody and thus minimize his exposure to the virus, which would best protect his health.  *Cf. United States v. Salas-Arroyo*, No. CR13-51RSL, 2021 WL 1209218, at *4 n.2 (W.D. Wash. Mar. 31, 2021) (collecting cases granting compassionate release notwithstanding defendant's immigration detainer); *United States v. Azianbidji*, No. 17-CR-00253-PWG, 2021 WL 307416, at *5 (D. Md. Jan. 29, 2021) (same).

Accordingly, the Court finds that a sentence reduction would be consistent with the sentencing factors set forth in Section 3553(a) and would not pose an undue risk to public safety.

\ \ \

9

### III.    CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **GRANTED**, to be effective at the close of business today.  Torres's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3852(c), effective immediately.

The Court further **ORDERS** that if Torres is not taken into U.S. Immigration and Customs Enforcement ("ICE") custody upon his release from federal criminal custody, he shall contact the U.S. Probation Office in San Diego within 24 hours.  Torres shall thereafter abide by the terms of supervised release set out in the original Judgment.

The Government shall serve copies of this order on the Facility Administrator of Great Plains immediately.  The Facility Administrator shall immediately release Defendant Jaris Torres-Iturre from custody.  In the event that the Facility Administrator or any party requests any clarification of or modification to this order, they shall make such request in writing immediately upon receipt of the order.

**IT IS SO ORDERED.**

Dated:  April 8, 2021

Hon. Gonzalo P. Curiel
United States District Judge

3:15-cr-2586-GPC-1